IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BRIAN STRASBURG, on behalf of<br>T.K.S, | ) | Civil No.: 3:12-cv-01870-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

        Merrill Schneider
        Schneider Kerr Law Offices
        PO Box 14490
        Portland, OR 97293

                Attorney for Plaintiff


        S. Amanda Marshall, U.S. Attorney
        Adrian L. Brown, Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Lars J. Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Brian Strasburg brings this action on behalf of TKS, a minor, pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying TKS's claim for Supplemental Security Income (SSI) benefits. Plaintiff seeks a judgment reversing the Commissioner's decision and remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, he asks that the action be remanded for further proceedings.

For the reasons set out below, the Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff filed an application for SSI on TKS's behalf on June 25, 2008, alleging that TKS had been disabled since April 13, 2003 because of Attention Deficit Hyperactivity Disorder (ADHD) and Oppositional Defiant Disorder (ODD). After the application was denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ John Madden, Jr. on December 16, 2010. In a decision dated January 7, 2011, ALJ Madden, Jr. found that TKS was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner

FINDINGS AND RECOMMENDATION - 2

on August 16, 2012, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff challenges that decision.

### Factual Background

TKS was born on June 2, 1997.  He was 5 years old at the time of his alleged onset of disability, and was 13 years old at the time of the ALJ's decision.  In material submitted in support of the application for SSI benefits, TKS's mother asserted that TKS could not concentrate on any activity for more than a few minutes and could not tolerate changes in routine or any type of authority.

The administrative record indicates that TKS has had a difficult childhood.  The record shows that TKS's parents at times engaged in substance abuse and domestic violence.  Because of allegations of neglect and his mother's substance abuse, TKS was removed from his mother's custody and placed with his grandparents when he was 8 years old.  He was later returned to his mother's care.

The record indicates that TKS had academic problems during his early years of schooling.  He was removed from preschool because of defiant and aggressive behaviors, which included hitting and biting teachers.  TKS spent considerable time in the principal's office, and his mother was often asked to pick him up early from school because of behavioral problems. He was first diagnosed with ADHD and ODD during his early years of education, and he continued to have some disciplinary issues, difficulty completing tasks, and interpersonal problems at school as he aged.

**<u>Establishing Disability</u>**

A claimant who is under the age of 18 is "disabled" within the meaning of the Act if he is not engaged in substantial gainful activity and has a medically determinable physical and/or mental impairment or combination of impairments that either meets or equals a presumptively disabling impairment included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, or results in marked or extreme functional limitations. SSR 09-1p (Mar. 19, 2009), <u>available at</u> 2009 WL 396031.

In evaluating a child claimant's application for SSI, an ALJ first considers whether the child performs substantial gainful activity. 20 C.F.R. § 416.924(b). A child who performs substantial gainful activity is not disabled. <u>Id.</u> The ALJ next determines whether the child has a severe medically determinable impairment or impairments. 20 C.F.R. § 416(c). A child who does not have such an impairment is not disabled. <u>Id.</u> If the child has a severe impairment or impairments, the ALJ determines whether the impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the "listings." 20 C.F.R. § 416.924(d). In making that determination, the ALJ evaluates the degree of limitation caused by the impairment in six "domains;" 1) acquiring and using information; 2) attending and completing tasks; 3) interacting with and relating to others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 C.F.R. § 416.926(a). An impairment functionally equals a listed impairment if it causes a "marked" limitation in two of these domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A child is disabled if an impairment or combination of impairments meets or equals an impairment in the listings. 20 C.F.R. § 416.926(d)(1).

FINDINGS AND RECOMMENDATION - 4

**ALJ's Decision**

At the first step of his disability analysis, the ALJ found that TKS had not engaged in substantial gainful activity since his application for benefits was filed.

At the second step, the ALJ found that TKS's severe impairments included ADHD, ODD, and Anxiety Disorder, NOS.

At the third step, the ALJ found that TKS did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled an impairment in the listings, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered mental disorders in listing 112.00, and concluded that TKS had no limitation in acquiring and using information, moving about and manipulating objects, or in health and well-being, and less than marked limitations in attending to and completing tasks and interacting with and relating to others.

Based upon these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

FINDINGS AND RECOMMENDATION - 5

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.


### Discussion

Plaintiff contends that the ALJ erred in rejecting Dr. Lon McQuillan's opinion concerning the severity of TKS's ADHD and in finding that TKS's impairments did not functionally equal the listings.

### 1. ALJ's Rejection of Dr. McQuillan's Opinion

### a. Establishing Mental Impairment That Meets or Equals Listings

As noted above, at the third step of the childhood disability analysis, an ALJ must consider whether the claimant's impairments, alone or in combination, meet or medically equal a listed impairment.  20 C.F.R. § 418.924(d).  Listing 112.00 includes the mental impairments upon which TKS's claims are based.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.00.

Listing 112.11 sets out the criteria for establishing that ADHD is a disabling impairment. Under this provision, a claimant's ADHD meets or medically equals the listings if it is "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity."  An impairment meets that requirement if the criteria set out in Part A and Part B are satisfied.  Part A requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity.  For children of TKS's age, Part B additionally requires that these limitations result in at least two of the following impairments:

a. Marked impairment in age-appropriate cognitive communicative function;

b. Marked impairment in age-appropriate social functioning;

c. Marked impairment in age-appropriate personal functioning; and

d. Marked difficulties in maintaining concentration, persistence, or pace.

Documentation by history and medical findings, and by appropriate standardized tests, if necessary, is required for parts a, b, and c.  Id.

b. **Dr. McQuillan's Opinion**

At the request of Plaintiff's counsel, Dr. McQuillan, one of TKS's treating physicians, completed a form setting out his opinion concerning TKS's diagnoses and impairments.   Dr. McQuillan indicated that he had treated TKS from December 2004 to June 2006, and from November 2009 until November 30, 2010, the date of the assessment.  Dr. McQuillan endorsed statements on the form indicating that TKS's diagnoses included ADHD, Anxiety, and ODD, and that his ADHD was "manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity," and opined that TKS's level of impairment in each of these areas was "marked."  Dr. McQuillan also opined that TKS had  "marked" limitations in concentration, persistence, and pace; cognitive/communicative functioning, social functioning, and personal functioning.  This assessment, if accepted, would establish that TKS's impairments met the listing for ADHD.

c. **ALJ's Assessment of Dr. McQuillan's Opinion**

The ALJ noted that Dr. McQuillan had "endorsed TKS's symptoms of hyperactivity, anxiety, difficulty sustaining focus and attention, and difficulty with authority anger," and had opined that he had " 'marked' limitations in attention, impulsiveness, hyperactivity, concentration, persistence, pace, cognitive communicative functioning, social functioning and personal functioning."  The ALJ asserted, however, that "the substantial evidence of record, including claimant's testimony, treatment history, and school records, indicate that Dr.

McQuillan's opinion is overstated."  He cited Dr. McQuillan's treatment records, which he

asserted "do not support his opinion."  The ALJ agreed that TKS had "deficits with inattention,

impulsiveness, hyperactivity, concentration, persistence, pace, cognitive communicative

functioning, social functioning, and personal functioning."   However, he gave "little weight to

Dr. McQuillan's opinion" and concluded that TKS's deficits were "not as extreme as Dr.

McQuillan states."  In the extensive review of the record which preceded his assessment of Dr.

McQuillan's opinion, the ALJ observed that "the record indicates that intervention, including

medication . . . has decreased claimant's symptoms."

In the same section of his opinion in which he addressed Dr. McQuillan's opinion, the

ALJ also summarized and discussed the opinions of Ms. Gilleran, one of TKS's special

education teachers; Laura Bennet, M.A., who administered and evaluated psychological testing

of TKS; and a state agency psychiatric consultant who prepared a Childhood Disability

Evaluation Form based upon a review of the records in evidence as of September 2008.  The

ALJ gave greater weight to the opinions of these individuals, who described Plaintiff as less

severely impaired.

d. **<u>Discussion</u>**

Plaintiff contends that the ALJ erred in asserting that "[n]o treating or examining

physician mentioned findings equivalent in severity to the criteria of any listed impairment," and

erred in rejecting Dr. McQuillan's opinion as to the severity of TKS's mental impairments.  He

argues that the ALJ provided "insufficient reasoning" to support his rejection of Dr. McQuillan's

opinion and "offered no explanation for his alternative conclusions, other than his earlier

summary of select parts of the medical evidence and general statement that Dr. McQuillan's

opinion was overstated."  Plaintiff argues that Dr. McQuillan's opinion should be credited, and

FINDINGS AND RECOMMENDATION - 8

that this action should be remanded to the Agency for award of benefits.

I agree that the ALJ incorrectly asserted that no examining or treating physician had found that TKS's mental impairments met the criteria of a listed impairment: Dr. McQuillan opined that TKS had "marked" mental limitations that, if accepted, would satisfy the requirements for the ADHD listing.  However, I disagree with Plaintiff's assertion that the ALJ failed to adequately support his rejection of Dr. McQuillan's opinion, and his contention that remand for an award of benefits is appropriate.

The opinion of a treating physician such as Dr. McQuillan is not conclusive as to either a claimant's condition or the ultimate question of disability.  Magallanes v. Bowen, 881 F. 2d 747, 755 (9th Cir. 1989).  An ALJ may reject a treating doctor's opinion that is contradicted by another acceptable medical source by citing specific and legitimate reasons for doing so, which are supported by substantial evidence in the record.  Id.

Here, the ALJ cited evidence from other medical sources that was inconsistent with Dr. McQuillan's opinion, and provided specific and legitimate reasons, supported by the record, for rejecting his opinion.  The ALJ's observation that Dr. McQuillan's own treating notes were inconsistent with the severity of impairment to which he opined is supported by the medical record.  Dr. McQuillan's records indicate that TKS's ADHD symptoms were well controlled after he was prescribed Adderall in 2005, though they worsened after his mother took custody of him and his dosage needed to be increased in 2006.  After refilling TKS's Adderall prescription in November 2009, Dr. McQuillan noted in  January 2010 that his symptoms were "well controlled with no side effects," and characterized his "mood, affect, attention span, and concentration" as normal.

The ALJ's assertion that TKS's testimony, treatment history, and school records

FINDINGS AND RECOMMENDATION - 9

indicated that TKS's impairments were less severe than Dr. McQuillan opined is supported by the record, and supports the ALJ's assessment of Dr. McQuillan's opinion. E.g., 20 C.F.R. § 416.927(c)(4) (more weight given to medical opinions consistent with record as a whole). The ALJ correctly observed that Ann Gilleran, TKS's special education teacher, described TKS's deficits in attending and completing tasks and interacting with others as less than the "marked" deficits assessed by Dr. McQuillan, and did not endorse limitations in TKS's ability to acquire and use information, move about and manipulate objects, or care for himself, his health, and his physical well-being. Laura Bennet, M.A., administered multiple psychological tests and evaluated the results in a report signed by Joyce Ochsner, Ph.D. The ALJ's conclusion that Ms. Bennet's findings were consistent with the level of impairment found by the ALJ is supported by a review of her report.

The ALJ's conclusion that TKS's own testimony was inconsistent with the level of impairment reflected in Dr. McQuillan's opinion is also supported by a review of the record. Though TKS testified to significant difficulties in a number of areas, the ALJ could reasonably conclude that TKS testified to impairments that were not "marked." Moreover, TKS's mother testified that his behavior was "not too bad" if TKS took his medication.

The ALJ provided specific, legitimate reasons for rejecting Dr. McQuillan's opinion, and these reasons were supported by substantial evidence in the record.

## 2. **ALJ's Conclusion That TKS's Impairments Do Not Functionally Equal a Listing**

As noted above, in determining whether a severe impairment or combination of impairments meets or equals an impairment in the listings, the ALJ evaluates the degree of limitation caused by the impairment in six "domains:" 1) acquiring and using information; 2) attending and completing tasks; 3) interacting with and relating to others; 4) moving about and

FINDINGS AND RECOMMENDATION - 10

manipulating objects; 5) caring for oneself; and 6) health and physical well-being.  20 C.F.R.  §
416.926(a).  An impairment functionally equals a listed impairment if it causes a "marked"
limitation in two of these areas or an "extreme" limitation in one area.  20 C.F.R.  § 416.926a(d).

    Plaintiff contends that the ALJ erred in finding that TKS's mental impairment did not
functionally equal the listings.  He asserts that the record "supports the conclusion that TKS
actually suffers from *marked* limitations in attending and completing tasks and interacting and
relating with others," and that the ALJ erred in failing to find TKS was disabled on that basis.  In
support of this contention, he notes that the ALJ cited TKS's teachers' observation that TKS had
a short attention span and had difficulty staying focused and timely completing tasks, and TKS's
mother's testimony that someone must be "on" TKS in order for him to complete any tasks.  He
also notes that the ALJ cited a number of examples of TKS's difficulty with interpersonal
interactions, including his difficulty following instructions and being respectful, difficulty
establishing friendships, disciplinary problems at school, and difficulty with changes in his
routine.

    Plaintiff asserts that the ALJ failed to cite additional evidence showing that TKS was
much more limited in these areas.  He notes that TKS has been on Individualized Educational
Plans (IEPs) throughout his years in school, and asserts that Ms. Gilleran, TKS's special
education teacher, described difficulties in concentration that the ALJ should have characterized
as marked.  Plaintiff contends that other teachers' descriptions of TKS's difficulties with
attention and concentration and the observations of TKS's parents also establish that TKS has
marked limitations in attending and completing tasks.  He also cites evidence of TKS's problems

interacting with others, and contends that the record shows that TKS's problems in this area were, contrary to the ALJ's assessment, "marked."

There is no question that the record includes substantial evidence that TKS has attention problems that have made it difficult for him to maintain concentration and complete tasks, and has had significant difficulty with social relationships. The ALJ cited and discussed this evidence in his decision. However, in his extensive summary of the evidence, the ALJ also cited substantial evidence that fully supported his conclusion that TKS's impairments in these areas were less than "marked." This evidence included records indicating that TKS was "close to meeting" and "meeting" academic performance standards and "often" showed the characteristics of a successful learner by the end of the 2006-2007 school year, was performing at an "average" level in all areas except mathematics in 2007, was reported to be usually diligent and often demonstrate effort in his classes during the 2008-2009 school year, and met achievement levels in mathematics and reading/literature during the 2009-2010 academic year. The ALJ also cited TKS's parents' characterization of his social skills as within the "average" range; a 2006-2007 teacher's report indicating that TKS cooperated with others and "often" respected "others, rules, [and] authority;" a 2007 psycho-educational evaluation that rated TKS's social skills as "average" and indicated that TKS had no "interpersonal difficulties;" a 2008-2009 report card indicating that TKS participated in class, was a pleasure to have in class, and worked cooperatively in a team setting; an April 2009 report indicating that TKS liked going to school and had many friends at school and in his neighborhood, and TKS's testimony that he had had no detentions during the then-current academic year and had established a friendship with a student at the school he had previously attended.

FINDINGS AND RECOMMENDATION - 12

As the Commissioner correctly notes, the ALJ is responsible for resolving ambiguities and conflicts in the medical evidence, Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995), and an ALJ's decision must be upheld if it is supported by evidence that a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The ALJ here thoroughly reviewed the relevant evidence in the extensive record, and his conclusion that TKS's impairments in the areas in question were neither "marked" nor extreme was reasonable. The Commissioner's decision denying TKS's claim should therefore be affirmed.

## Conclusion

A Judgment should be entered AFFIRMING the Commissioner's decision and DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 28 , 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of October, 2013.


    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION - 13